UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN L. PFAU, a single person,<br><br>    Plaintiff,<br><br>vs.<br><br>WASHINGTON MUTUAL, INC., a<br>corporation,<br><br>    Defendant. | NO. CV-08-00142-JLQ<br><br>**ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

    **BEFORE THE COURT** is the Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 12) and the Defendant's Counter-Motion for Partial Summary Judgment (Ct. Rec. 28). The Motions were heard with oral argument on October 7, 2008, at which time judgment was reserved due to the uncertainty of the status of the Defendant. Joe Delay appeared on behalf of the Plaintiff, who was also present. Kevin Breck appeared on behalf of the Defendant.

    For the reasons stated herein, the Plaintiff's Motion for Partial Summary Judgment is **DENIED** and the Defendant's Motion for Partial Summary Judgment is **GRANTED**.

## I. STATEMENT OF FACTS

### A. Procedural History

    Plaintiff John L. Pfau ("Pfau") filed his original Complaint in Spokane County Superior Court on April 4, 2008. Defendant Washington Mutual, Inc. ("Washington Mutual") removed the action to this court based on diversity jurisdiction on April 29, 2008. Mr. Pfau filed his Amended Complaint on July 9, 2008, in response to which Washington Mutual filed it's Answer and Affirmative Defenses on July 31, 2008.

ORDER - 1

Mr. Pfau filed his Motion for Partial Summary Judgment on July 31, 2008, seeking partial summary judgment that he was not in default on his deed of trust obligations owed to Washington Mutual on N. 201 and N. 207 Napa Street, Spokane, Washington.  Washington Mutual filed a Counter-Motion for Partial Summary Judgment on August 29, 2008, seeking partial summary judgment relating to all Mr. Pfau's claims regarding 201 N. Napa, emotional distress, violation of the Washington Consumer Protection Act, violation of the Fair Credit Reporting Act, unjust enrichment, wrongful institution of foreclosure, and slander of title.  The unaddressed claims are Claim 3, for breach of agreement, and Claim 8, for declaratory judgment regarding the status of the Note and loan on 207 N. Napa.

**B.  Factual Background**

Mr. Pfau was the owner of two parcels of land, located at 201 and 207 N. Napa St. in Spokane, Washington.  On September 5, 2002, Mr. Pfau encumbered both pieces of property with mortgages which were properly recorded with the County of Spokane. Washington Mutual acquired a beneficial interest in both of Mr. Pfau's properties from the previous mortgage holder in March 2003.  Issues arose involving the escrow accounts attached to the loans during the transition from the previous mortgage holder to Washington Mutual.  In an October 7, 2005 letter, Washington Mutual, in response to a request by Mr. Pfau, waived the property tax and insurance escrow requirements for both loans.  Mr. Pfau was advised to inquire of his local property tax collector and insurance agent regarding future payment due dates and billing dates.  Along with this letter, Washington Mutual sent Mr. Pfau two checks for the residual balance in the escrow accounts.  As of October 7, 2005, Washington Mutual records indicated a zero balance in the escrow accounts.

The current dispute arises from the non-payment of October, 2005 taxes on both properties.  The County of Spokane sends out its tax bills in February of each year, with two payments due; one each by the end of April and October.  Mr. Pfau contends that it was the responsibility of Washington Mutual to pay the taxes due at the end of October

2005, on the grounds that it received the bill in February of that year and had billed him for escrow payments, including property tax reserves, throughout 2005.   Washington Mutual contends that the letter dated October 7, 2005 combined with the refund and closure of the escrow accounts and its direction to Mr. Pfau to inquire as to the tax status on the properties, immediately transferred the responsibility to pay taxes on both properties to Mr. Pfau, which he then failed to do.  Mr. Pfau's records indicate that his monthly statements for both loans subsequent to the October 7, 2005 letter reflected the lesser monthly amounts owing  due to the deletion of the escrow accounts.  Along with the letter deleting the escrow accounts, Mr. Pfau was provided with an amended amortization schedule for each loan which also reflected the lowered monthly payments. When Mr. Pfau made his payment for November 2005 on October 22, 2005 he included an extra $124.18 with his payment, a sum he claims he intended to be applied towards the October, 2005 taxes.  Having already deleted the escrow account, Washington Mutual applied this sum to the loan's principal.

On January 17, 2006 Washington Mutual notified Mr. Pfau by letter that his property taxes were in arrears. Washington Mutual attached a copy of the notice sent them by the County of Spokane and advised Mr. Pfau to pay the taxes promptly, as they were now his responsibility.  The Washington Mutual letter allowed Mr. Pfau 30 days to pay his back taxes and notified him that, in the event he did not do so, the deleted escrow accounts would be re-established and his monthly payments would be readjusted upwards.  Two weeks after receiving these notifications from Washington Mutual, Mr. Pfau received his 2006 tax bill from the County of Spokane indicating that the taxes due in October, 2005 had not been paid.

 Mr. Pfau took no action until April 28, 2006, when he attempted to pay Spokane County both the second half of 2005 taxes and the first half of 2006 taxes.  His check was returned to him by the County of Spokane because his taxes had been paid in full by Washington Mutual on April 21, 2006. After paying Mr. Pfau's taxes on April 21, 2006, Washington Mutual re-established the escrow accounts attached to both loans and

diverted money from his monthly payments to pay down the escrow balance. Washington Mutual also readjusted Mr. Pfau's monthly amount due upwards, and this was reflected in his statements beginning on June 1, 2006.  Mr. Pfau's payments, however, continued to be in the amount of the lower monthly payment called for by the amortization chart that accompanied the October 7, 2005 letter deleting the escrow payments.  Washington Mutual noted these payments as being late, due to the fact that the amount received was not the full statement balance due.  Late fees were assessed and the funds were placed into a suspense account.  Washington Mutual made payments to the escrow account, and to the loan principal and interest once sufficient funds accumulated in the suspense account to constitute a full monthly payment.

Mr. Pfau attempted to pay his taxes on both properties for the second half of 2006 in October, 2006, but his check was again returned as Washington Mutual had already made the payments from funds in the re-established escrow accounts.  Mr. Pfau sent Washington Mutual checks for the full amount of the taxes (second half of 2005 and entirety of 2006) as reimbursement on December 9, 2006.  These payments were applied to Mr. Pfau's accounts, which by this point were several months in arrears due to Mr. Pfau's consistent payments for less than the amount due.  The application of this reimbursal brought Mr. Pfau current through November, 2006.

Also in December, likely due to confusion surrounding the suspension and subsequent reinstatement of the escrow accounts attached to the loans, Mr. Pfau received two escrow refund checks.  Mr. Pfau claims he was instructed to refrain from cashing these checks and to continue making only principal and interest payments according to the amortization charts provided him in October 2005.

Mr. Pfau received two letters, dated January 5, 2007 and January 18, 2007, informing him of collection activity on his loan for 201 N. Napa.  The letters stated that Mr. Pfau had failed to make the required monthly payments since December 1, 2006. Mr. Pfau did make, and Washington Mutual received, a payment on December 5, 2006. However, due to the readjusted payments and Mr. Pfau's continued payment of the lesser

amount, this check only brought Mr. Pfau current though the end of September, 2006, for 201 N. Napa.  As noted above, the tax reimbursal that Mr. Pfau sent to Washington Mutual brought him up to date through the end of November, 2006.

Washington Mutual sent Mr. Pfau a Notice of Default on April 3, 2007 which stated that Mr. Pfau had missed his payments on 201 N. Napa from December 2006 through April, 2007.  During this time, Mr. Pfau did send checks to Washington Mutual in the same, lesser amount that he had been sending since October 2005.  However, in addition to being written for less than the payment due, he sent several of these checks with the payment stub for 207 N. Napa, and there was no indication on the check as to which funds were to be applied to which account.

On May 23, 2007, Washington Mutual sent Mr. Pfau a Notice of Foreclosure and Notice of Trustee's Sale on 201 N. Napa.  Washington Mutual stopped accepting payments from Mr. Pfau in May 2007, returning checks to him at this time.  A follow-up letter to Mr. Pfau from Washington Mutual, sent on July 16, 2007, confirmed the date of the Sale as August 24, 2007.  Mr. Pfau commenced no legal action to enjoin the Sale, and it was held as scheduled on August 24, 2007 thus terminating Mr. Pfau's interest in N. 201 Napa Street.

On August 2, 2007, Mr. Pfau received a Notice of Default regarding his property at 207 N. Napa.  The statement indicated that Mr. Pfau had not made his June, 2007 payment.  Washington Mutual sent Mr. Pfau a Notice of Foreclosure and a Notice of Trustee's Sale on October 19, 2007.  The Sale, set for January 25, 2008, was cancelled by Washington Mutual in light of the ongoing dispute over the foreclosures.

## II.  SUMMARY JUDGMENT STANDARD AND BURDEN OF PROOF

A motion for summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Such genuine issue of material fact exists where there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

When applying the summary judgment standard, the court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the court of the basis for it's motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324. The non-moving party must do more than show that there is some abstract doubt as to the material facts. "...summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### III. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The Plaintiff, John Pfau, moves the court to grant partial summary judgment in his favor, arguing that a default never actually occurred on either property and that Washington Mutual illegally instituted foreclosure proceedings. There are sufficient issues of material fact regarding the location and application of funds to defeat Plaintiff's Motion for Partial Summary Judgment. Furthermore, Plaintiff's argument regarding whether or not a default actually occurred is rendered moot by the court's granting of the

Defendant's Counter-Motion for Partial Summary Judgment.

      The claim was removed to this court on the basis of diversity jurisdiction under 28 U.S.C. §1332, and jurisdiction is proper within the district where the action is pending under 28 U.S.C. §1441(b).  In a diversity case, the district court must apply the choice of law rules of the state in which it sits.  *Waggoner v. Snow*, *Becker, Kroll, Klaris, & Krauss*, 991 F.2d 1501 (9th Cir. 1993).  "In Washington, the 'presumptive local law' applies unless there is 'an actual conflict between the laws or interests of Washington and the laws or interests of another state.'"  *Brewer v. Dodson Aviation*, 447 F.Supp.2d 1166, 1175 (W.D.Wash. 2006).  Neither party contests the application of Washington law in the case at hand.

      Washington law requires, *inter alia*, prior to a trustee's sale of a deed of trust, "[t]hat a default has occurred in the obligation secured or a covenant of the grantor, which by the terms of the deed of trust makes operative the power to sell..."  RCWA 61.24.030(3).  "Washington law follows the general common law regarding payment and burdens of proof."  *In re Garvida,* 347 B.R. 697, 705 (9th Cir.BAP (Wash.), 2006), citing *W. Coast Credit Corp. v. Pedersen*, 64 Wash.2d 33, 390 P.2d 551, 553 (1964).

      "The general common law rule regarding payment and burdens of proof subdivides into successive burdens. First, once there is a prima facie showing of an indebtedness or obligation to pay, the burden of proving the facts regarding payment is on the party who alleges payment, ordinarily the obligor or debtor.  Second, under the common law rule, once the facts regarding payment have been demonstrated, the creditor (obligee) has the burden of proving that the payment was not effective to extinguish the debt or to satisfy the lien." *In re Garvida*, 347 B.R. at 705.

      For a payment to be sufficient, it must satisfy a three-prong test.  First, "[t]ender of payment on a note must be made at the place of payment to be effective."  *U.S. Bank Nat. Ass'n v. Whitney*, 119 Wash.App. 339, 347, 81 P.3d 135 (Wash.App. Div. 3 2003).  "The place of payment of a promissory note is the place stated in the instrument."  RCW 62A.3-111.  Secondly, the payment must be in the correct amount, or else a creditor is not

required to accept the payment.  *U.S. Bank*, 119 Wash.App. at 348.  Lastly, there must be mutual intent on the part of both parties that the funds in question constitute a payment. *Id.*

Mr. Pfau contends that he never defaulted on his loan obligations.  In it's letter dated October 7, 2005, Washington Mutual deleted the escrow accounts from Mr. Pfau's loans and instructed Mr. Pfau to "contact his local property tax collector and insurance agent for information regarding the next due dates for future billings" (Ct. Rec. 12, App. C, Ex. 16).  From the moment this letter was received, Mr. Pfau became responsible for any and all tax payments not yet tendered on his behalf by Washington Mutual.  The October, 2005 taxes were not due until October 31, 2005  (Ct. Rec. 27, Ex. 6), so Mr. Pfau was responsible for those taxes, pursuant to the October 7, 2005 letter from Washington Mutual. Washington Mutual also notified Mr. Pfau that his taxes were past due in January, 2006, and informed him that an escrow account would be reestablished if he did not furnish proof of payment of the taxes within 30 days (Ct. Rec. 27, Ex. 7).

Mr. Pfau sent two checks to Washington Mutual for escrow purposes that were cashed and unaccounted for in the banking records, totaling $600 (Ct. Rec. 12, App. 6, 000185-000185A).  It is unclear from the record what happened to these checks. Accordingly, Mr. Pfau argues that the checks refunded to him on October 7, 2005 did not represent the full balance owed him from his escrow accounts.  It is possible that Washington Mutual owed Mr. Pfau a greater escrow refund than was given him, but there is little in the record to suggest that Mr. Pfau contested this issue with Washington Mutual.

The refund of the balance of the escrow accounts provides further evidence, clearly communicated to Mr. Pfau, that Washington Mutual had no intention of paying any more taxes on Mr. Pfau's behalf.  Mr. Pfau's strongest argument lies in the "future billings" language of the letter.  Even though the due date for second half 2005 taxes came at the end of October, Spokane County billed Washington Mutual for this payment in February 2005.  Even though the bill was sent to Washington Mutual, the plain

language of "next due dates" and the refund of the escrow account balances sufficed to inform Mr. Pfau that he was responsible for the payment of the second half 2005 taxes, a responsibility he failed to discharge. Mr. Pfau argues that he paid an extra $124.18 with his November principal and interest payment, intending this surplus to be applied to his taxes (Ct. Rec. 12, App. 2, 227). The check provided in the records is unaccompanied by a payment stub, unlike most of Mr. Pfau's check records. When Washington Mutual received the check after the escrow account had been deleted for an amount more than the principal and interest due, the extra amount was placed in surplus and later applied to the loan principal. Mr. Pfau was notified of the tax deficiency, both by Washington Mutual and the County of Spokane, and had the opportunity to remedy the situation himself. Mr. Pfau could have inquired of Washington Mutual, after receipt of both the October 7, 2005 letter and the tax arrearage letter in January 2006, as to the exact tax issues involving his loans prior to any escrow account reattachment. The key concern for both parties was that the taxes be paid. Washington Mutual explicitly gave Mr. Pfau the opportunity to pay them, and when he did not, it paid them on his behalf. Washington Mutual did nothing outside it's rights as holder of a deed of trust.

Mr. Pfau's obligation to pay is uncontested, therefore Washington Mutual must demonstrate why the payment tendered was insufficient to satisfy it. Once the escrow accounts were reattached by Washington Mutual, the monthly payments due were properly readjusted upwards (Ct. Rec. 12, App. A, 00471, descending). Mr. Pfau subsequently paid the lower amount indicated by the October 2005 amortization charts. *Id*. Based on the three-prong test from *U.S. Bank*, these payments were not valid and were not required to be accepted by Washington Mutual. The first prong, proper place of payment, is met because Mr. Pfau properly mailed the checks to Washington Mutual. The third prong, mutual intent, is met as Washington Mutual sent the bills, cashed the checks, and applied them to Mr. Pfau's various accounts. However, the second prong of the test, payment in the proper amount, is not met. Under *U.S. Bank*, Washington Mutual was not required to accept payments for less than the amount due. Mr. Pfau did not

believe he needed to make larger payments, but there is nothing to indicate that the larger payments set by Washington Mutual were improper or that Washington Mutual did not inform Mr. Pfau of the larger monthly sums, both before and after they were instituted.

Mr. Pfau argues that his conversations with David Tunson, an employee at Washington Mutual, and a January, 2007 directive by Mr. Tunson to accept principal and interest payments pending escrow account deletion condoned his previous payment of the lower amounts (Ct. Rec. 12, App. 4, WAMU-88).  Whether Mr. Pfau believed it appropriate or not, Washington Mutual had the right to pay his taxes to protect it's interest in the properties when it was notified of the tax arrearage by the County of Spokane.  As a result of it's payment, Washington Mutual had the right to reinstate the escrow accounts.  Mr. Pfau was clearly warned of both these possible actions and was given 30 days to prevent them from being taken (Ct. Rec. 27, Ex. 7).  Mr. Pfau did not do so, therefore he owed larger monthly payments, which he did not pay.  Accordingly, Mr. Pfau continuously remitted less than the amount due on his mortgages, thereby constituting invalid payments under the second prong of the *U.S. Bank* test.

Due to the fact that greater amounts were credited to the 207 N. Napa loan (Mr. Pfau often wrote single checks for both loans or did not indicate how he wanted the money distributed between the loans), it took longer for the short payments to catch up to 207 N. Napa.  When they did, Washington Mutual acted within it's rights in instituting foreclosure proceedings.

There is evidence that Mr. Pfau, by reimbursing Washington Mutual for the taxes they paid on his behalf, paid most or all of the monies owed.  However, each month that he paid less than the amount due constituted an invalid payment that Washington Mutual was not required to accept.  As a direct result, late charges were assessed each of these months, though some were later reversed. Even though he believed he was justified in making lower payments, this belief did not confer on Mr. Pfau the right to do so, especially when considered in light of the warnings and notices given him by Washington Mutual.

Mr. Pfau paid less than the requisite amount due according to his statements on numerous occasions.  Washington Mutual mishandled Mr. Pfau's accounts at times, and the two checks unaccounted for cloud the issue.  These checks and the accounting issues present genuine issues of material fact that, when construed in the favor of the non-moving party, are sufficient to defeat Mr. Pfau's Motion for Partial Summary Judgment.  Furthermore, the Plaintiff's Motion is rendered irrelevant by the waiver doctrine, as discussed below.  Accordingly, the Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

## IV.  DEFENDANT'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT

In it's Counter-Motion for Partial Summary Judgment, the Defendant argues that the Plaintiff has waived any and all claims concerning the Defendant's foreclosure on 201 N. Napa by not taking legal action to prevent the foreclosure after being made aware thereof.  The Defendant further moves for summary judgment on several of the Plaintiff's other claims.

*A.  Claims Relating to 201 N. Napa*

RCW 61.24.030 states the requirements that must be met for a trustee's sale to proceed.  RCW 61.24.030(3) requires that a default must have occurred, and RCW 61.24.030(4) requires that there exist no pending actions concerning the underlying obligation.  RCW 61.24.130 states the procedure by which any person with an interest in a property may "restrain, on any proper legal or equitable ground, a trustee's sale."  Furthermore, if a party fails to take advantage of the presale remedies, he may waive the right to object to the sale under RCW 61.24.040(1)(f)(IX).  This statutory procedure is "the only means by which a grantor may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure."  *Plein v. Lackey,* 149 Wash.2d 214, 226, 67 P.3d 1061, 1066 (Wash. 2003), citing *Cox v. Helenius*, 103 Wash.2d 383, 388, 693 P.2d 683 (Wash. 1985).  In *Cox*, the Washington Supreme Court specifically held that "an action contesting the default, filed after notice of sale and foreclosure has been received,

does not have the effect of restraining the sale." *Cox*, 103 Wash.2d at 388.

The Washington Supreme Court addressed this exact issue again in *Plein*. "Although his [Plein's] complaint sought a permanent injunction and disputed whether there was a default [by alleging the debt had been extinguished], he never sought a preliminary injunction or any order that would have halted the sale, and accordingly did not comply with other requirements such as providing the trustee with five days notice of any attempt to seek such an order." *Plein*, 149 Wash.2d at 226. The Supreme Court's holding in *Plein* states that "by failing to obtain a preliminary injunction or other restraining order restraining the trustee's sale, as contemplated by RCW 61.24.130, Plein waived any objections to the foreclosure proceedings." *Plein*, 149 Wash.2d at 229.

There is a three-part test for determining whether or not waiver has actually occurred. "[W]aiver of any postsale contest occurs where a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to sale, and (3) failed to bring an action to obtain a court order enjoining the sale [citations omitted]." *Plein,* 149 Wash.2d. at 227.

RCW 61.24.030 requires two conditions be met before a trustee's sale may be initiated. First, there must have been a default on the loan. Second, there may exist no pending actions involving the underlying obligation. In the case at hand, Mr. Pfau alleges that no default occurred. Washington Mutual alleges that a default did in fact occur. The second requirement was met because there existed no pending legal action involving the underlying obligation when the foreclosure was initiated.

Once Washington Mutual began the process of foreclosure, Mr. Pfau did not seek to enjoin or restrain the sale. The plain language of RCW 61.24.040(1)(f)(IX) provides that such legal action is the only remedy available and that such contest may be made "on any proper legal or equitable ground." As the Supreme Court noted in *Cox*, such legal action by the grantor represents the only means available to him to contest the foreclosure." *Cox,* 103 Wash.2d at 388.

It is uncontested that on April 3, 2007, Washington Mutual issued Mr. Pfau a Notice of Default on 201 N. Napa (Ct. Rec. 27, Ex. 11). On May 23, 2007, Washington Mutual issued Mr. Pfau a Notice of Foreclosure and Notice of Trustee's Sale (Ct. Rec. 27, Ex. 12). On July 16, 2007, Washington Mutual confirmed the date of the Trustee's Sale (Ct. Rec. 27, Ex. 14), and the Sale was held as scheduled on August 24, 2007 (Ct. Rec. 27, Ex. 14).

It is undisputed that Mr. Pfau received these Notices, and they explicitly informed him of the judicial remedies available to him. The Notice of Default included the following language: "The grantor or any successor in interest has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground" (Ct. Rec. 27, Ex. 11, p. 3). The Notice of Foreclosure contained the following language: "You may contest this default by initiating action in the Superior Court of the county in which the sale is to be held. In such action, you may raise any legitimate defenses you have to default..." (Ct. Rec. 27, Ex. 12, p. 2). The Notice of Trustee's Sale included the following language: "IX. Anyone having any objection to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's Sale" (Ct. Rec. 27, Ex. 12, p. 4). The letter confirming the Trustee's sale included the following language: "Unless you obtain written acknowledgment that any scheduled sale will be postponed, this sale will be held as scheduled" (Ct. Rec. 27, Ex. 14).

"Any proper legal or equitable ground" includes contesting the default as improper or erroneous. This conclusion was reached in *Cox*, when the Supreme Court held that an allegation of improper default brought after the foreclosure was not a valid restraint on the sale. *Cox*, 103 Wash.2d at 388. In *Plein*, The Supreme Court reached the same conclusion regarding challenges to the validity of the foreclosure, holding that a contest on that ground must be brought prior to foreclosure. *Plein*, 149 Wash.2d at 226. Mr. Pfau contends that if a default never occurred, the first requirement for initiating

foreclosure proceedings under RCW 61.24.030 was not met, thereby rendering the foreclosure sale and Washington Mutual's waiver defense invalid.

The court is not persuaded by this argument. Washington Mutual alleges that default occurred, and it cannot be restrained from initiating a foreclosure proceeding simply because a mortgagor maintains they did not default. The act of foreclosure would be greatly hindered if RCW 61.24.130 were interpreted in this manner. The statutory presale remedies provided Mr. Pfau the appropriate forum in which to contend that the foreclosure or default was erroneous.

Mr. Pfau states that "such a result, that a person not in default may have their property taken away and sold while there is no default is contrary to the policy of the deed of trust statute" (Ct. Rec. 46-2, p. 5). This characterization of foreclosure procedure is inconsistent with Washington law. It is not possible, as Mr. Pfau suggests, for Washington Mutual to simply foreclose and sell property over the objections of a mortgagor. In such a case, the mortgagor's remedies are clear and swift under Washington law; the same remedies of which Mr. Pfau inexplicably failed to avail himself. As the Supreme Court stated in *Plein*: "The Act includes a specific procedure for stopping a trustee's sale so that *an action contesting default can take place* (emphasis added)." *Plein,* 149 Wash.2d at 225. Furthermore, "[a]dequate remedies to prevent wrongful foreclosure exist in the presale remedies, and finding waiver in these circumstances furthers the goal of providing an efficient and inexpensive foreclosure process and promoting the stability of land titles." *Plein*, 149 Wash.2d at 228, citing *Country Express Stores, Inc., v. Sims*, 87 Wash.App. 741, 752 (Wash.App. Div. 2 1997). The Court further noted that "to allow one to delay asserting a defense [until after the sale] would be to defeat the spirit and intent of the trust deed act." *Plein*, 149 Wash.2d at 228. "[A] person waives the right to contest the underlying obligations on the property in foreclosure proceedings when there is no attempt to employ the presale remedies under RCW 61.24.130." *CHD, Inc. v. Boyles,* 138 Wash.App. 131, 139, 157 P.3d 415 (Wash.App. Div. 3 2007).

The court is not persuaded by Mr. Pfau's argument that a default must be categorically proven to have existed prior to foreclosure or else a foreclosing party loses the protection of statutory waiver even after the non-contested foreclosure completion. Default will be contested in many foreclosures, and it is clear that such disputes must be contested via the pre-sale remedies or else they are waived. A dispute of the occurrence of default is not removed from the realm of waivable defenses merely through a mortgagor's contention that the default was improper or erroneous.

It is clear that Mr. Pfau has waived all post-sale grounds for disputing the foreclosure on N. 201 Napa. The three-prong test from *Plein* is met; as exhibited in the facts cited from the record, Mr. Pfau (1) received notice of his right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to sale, and (3) failed to bring an action to obtain a court order enjoining the sale. The Plaintiff has waived all claims related to the default and foreclosure on 201 N. Napa, including his claims for Emotional Distress, Consumer Protection Act violations, Fair Credit Reporting Act violations, Unjust Enrichment, Wrongful Foreclosure, and Slander of Title. The Defendant's Counter-Motion for Partial Summary Judgment is **GRANTED**.

*B. Emotional Distress*

The Defendant's Counter-Motion for Partial Summary Judgment on the Plaintiff's claim for emotional distress is **GRANTED**. The relationship between Washington Mutual and Mr. Pfau is of a contractual nature, therefore any and all alleged losses are economic and are limited to contractual remedies.

The economic loss rule "applies to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief." *Alejandre v. Bull*, 159 Wash.2d 674, 681 (Wash. 2007). "In short, the purpose of the economic loss rule is to bar recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses. If the economic loss rule applies, the party will be held to contract remedies, regardless of how the plaintiff characterizes the claims." *Alejandre*, 159 Wash.2d. at 683. The Washington Court of Appeals specifically addressed a claim

for emotional distress related to the alleged mishandling of a mortgage and the resulting foreclosure in *Davis v. Wells Fargo Home Mortgage*, 139 Wash.App. 1061 (Wash.App. Div. 2 2007). It was argued that the economic loss rule did not bar recovery for emotional distress since the mortgage contract made no specific provision to bar remedies for either emotional distress or negligence. The court held that the lack of express provisions for these damages did not prevent the application of the economic loss rule. *Davis*, 139 Wash.App. at 5-6.

*C. Washington Consumer Protection Act Violations*

The Defendant's Counter-Motion for Partial Summary Judgment on the Plaintiff's claims under the Washington Consumer Protection Act is **GRANTED**. The Plaintiff has waived any and all claims related to the foreclosure of 201 N. Napa, including any claims under the Consumer Protection Act, and has failed to allege the necessary elements of the claim in order to sustain it in regards to 207 N. Napa.

RCW 19.86.020 makes illegal "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ..." Mr. Pfau alleges that Washington Mutual, by initiating foreclosure proceedings on both pieces of property, engaged in unfair and deceptive acts (Ct. Rec. 10, First Cause of Action, ¶ I). Mr. Pfau seeks full compensatory and punitive damages under RCW 19.86.140 (Ct. Rec. 10, First Cause of Action, ¶ III), and attorney's fees under RCW 19.86.090 (Ct. Rec. 10, First Cause of Action, ¶ VI). Mr. Pfau failed to detail in his amended complaint how Washington Mutual violated the Act nor did he establish the five elements of such a claim mandated by the Washington Supreme Court in *Hangman Ridge Training Stables, Inc., v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 785-793 (Wash. 1986).

The U.S. District Court of Oregon, interpreting Washington law in the context of a foreclosure under RCW 61.24.130, held that the waiver doctrine applied to a plaintiff's analogous Oregon unfair trade practices claim. *Hallas v. Ameriquest Mortgage Company*, 406 F.Supp.2d 1176, 1182, (D.Or. 2005). In that case, the plaintiff sought relief for unfair trade practices, having failed to bring a claim to enjoin the foreclosure

1   sale prior to its occurrence.  In Washington, the First Division of the Washington Court

2   of Appeals upheld a ruling granting summary judgment to a lender as to all claims

3   brought by borrowers two years after foreclosure.  The Court of Appeals held that the

4   borrowers "waived their claims by failing to restrain the sale as required by the Deed of

5   Trust Act."  *Brown v. Household Realty Corp.,* 189 P.3d 233, 240 (Wash.App. Div. 1

6   2008).  This dismissal of all claims by the court included one based on an alleged

7   violation of the Washington Consumer Protection Act relating to the defendant's

8   handling of the underlying loan obligations.  *Brown*, 189 P.3d at 234.

9   *D.  Fair Credit Reporting Act*

10       The Defendant's Counter-Motion for Partial Summary Judgment on the Plaintiff's

11  claims under the Fair Credit Reporting Act is **GRANTED**.  The Plaintiff has waived any

12  and all claims related to the foreclosure of 201 N. Napa, including any claims under the

13  Fair Credit Reporting Act.

14       Mr. Pfau contacted the Credit Reporting Agencies regarding his dispute with

15  Washington Mutual (Ct. Rec. 10, Eighth Cause of Action, ¶ II).  Washington Mutual in

16  turn reported to the CRAs that a foreclosure sale was held on August 24, 2007, (Ct. Rec.

17  50, Ex. A), which was an accurate statement.  Since he did not enjoin the foreclosure sale,

18  Mr. Pfau cannot later claim that reporting the Sale constitutes a violation of the Fair

19  Credit Reporting Act.

20  *E.  Unjust Enrichment*

21       The Defendant's Counter-Motion for Partial Summary Judgment on the Plaintiff's

22  unjust enrichment claim is **GRANTED**.  The Plaintiff has waived any and all claims

23  related to the foreclosure of 201 N. Napa, including any unjust enrichment claims.

24  Furthermore, the Plaintiff may not rely on a theory of implied contract where a valid,

25  express contract governs.

26       "A party to a valid contract is bound by the provisions of that contract, and may

27  not disregard the same and bring an action on an implied contract relating to the same

28  matter, in contravention of the express contract."  *McDonald v. Hayner*, 43 Wash.App 81,

85 (Wash.App. Div. 1 1986).  Mr. Pfau argues that the October 7, 2005 letter that deleted the escrow accounts attached to his loans constituted a new agreement (Ct. Rec. 12, App. C, Ex. 16).  This was not the effect of the letter; it merely shifted the burden of tax payment from Washington Mutual to Mr. Pfau and deleted the escrow account requirements within the context of the original loan agreement.  The January, 2006 letter notifying Mr. Pfau of his tax arrearages made it clear that the escrow account could be reattached if Mr. Pfau did not pay his own taxes in a timely fashion (Ct. Rec. 27, Ex. 7).  Furthermore, the payment stubs sent to Mr. Pfau each month indicated how much he owed Washington Mutual under the terms of the mortgage and note (Ct. Rec. 12, App. A, 00471, descending).  All these documents, along with the original mortgage and note, constituted an express agreement between the parties in writing.  Therefore, Mr. Pfau may not bring an action on an implied contract relating to the same matter.  The implied contract claim that Mr. Pfau puts forth now is clearly related to the same matter, so the express agreement controls.

*F.  Wrongful Institution of Foreclosure*

The Defendant's Counter-Motion for Partial Summary Judgment on the Plaintiff's wrongful initiation of foreclosure claim is **GRANTED**.  The Plaintiff has waived any and all claims related to the foreclosure of 201 N. Napa, including any wrongful initiation of foreclosure claims.  Furthermore, such a claim is not recognized in Washington.  "[T]here is no case law supporting a claim for damages for the *initiation* of an allegedly wrongful foreclosure sale.  Moreover, there is no statutory basis supporting a claim for damages for wrongful *institution* of foreclosure proceedings."  *Krienke v. Chase Home Finance, LLC.,* 140 Wash.App 1032, 5, 2007 WL 2713737 (Wash.App. Div. 2 2007)(Unpublished Opinion).

*G.  Slander of Title*

The Defendant's Counter-Motion for Partial Summary Judgment on the Plaintiff's slander of title claim is **GRANTED**.  The Plaintiff has waived any and all claims related to the foreclosure of 201 N. Napa, and a slander of title claim related to 207 N. Napa fails

as a matter of law for the following reasons.

"The elements of slander of title are: that the words spoken must be false; that they must be maliciously spoken and that they must result in pecuniary loss or injury to the party complaining. They must also be spoken with reference to some pending sale or purchase of property...and it must be such a slander as goes to defeat the plaintiff's title." *Brown v. Safeway Stores*, 94 Wash.2d 359, 375, 617 P.2d 704 (Wash. 1980).

Mr. Pfau argues that he never stood in default on 207 N. Napa, therefore the statement's made in public by Washington Mutual concerning initiation of foreclosure on the property were false. The court is not persuaded by this argument, since initiation of a foreclosure did, in fact, occur. Describing an event that took place cannot be said to be a false statement, even if one party considers the occurrence of the event to be improper or erroneous. It is undisputed that Washington Mutual initiated foreclosure proceedings on 207 N. Napa, and later terminated the foreclosure action. Making statements about these facts cannot be considered slander of title.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 12) is **DENIED**.

2. The Defendant's Counter-Motion for Partial Summary Judgment (Ct. Rec. 28) is **GRANTED.** Claims 1-2 and 4-7 are hereby **DISMISSED** (as the claims are numbered on the cover page of the Amended Complaint; the claims are erroneously numbered internally), with Claims 3 (breach of agreement) and 8 (declaratory judgment) constituting the remaining Claims insofar as they relate solely to 207 N. Napa.

The Clerk is hereby directed to enter this Order and furnish copies to counsel.

DATED this 24th day of February, 2009,

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE
